No. 12178

IN THE SUPREME COURT OF THE STATE OF MONTANA

1972

---

ROBERT W. MYERS and GLORIA JEAN MYERS,
husband and wife,

Plaintiffs and Appellants,

-vs-

OTTO BENDEWALD and EVELYN BENDEWALD,
husband and wife,

Defendants and Respondents.

---

Appeal from: District Court of the Sixteenth Judicial District,
Honorable Alfred B. Coate, Judge presiding.

Counsel of Record:

For Appellants:

Tipp, Hoven and Brault, Missoula, Montana.
Raymond W. Brault argued, Missoula, Montana.
William T. Kelly argued, Billings, Montana.

For Respondent:

William F. Meisburger argued, County Attorney,
Forsyth, Montana.

---

Submitted: September 27, 1972

Decided: NOV 8 - 1972

Filed: NOV 8 - 1972

Thomas J. Kearney
Clerk

Mr. Justice Frank I. Haswell delivered the Opinion of the Court.

This is an appeal from a judgment and an order denying a new trial in Rosebud County. The district court, the Hon. Alfred B. Coate, district judge, sitting without a jury, entered findings of fact, conclusions of law, and judgment for the defendants in an action brought by plaintiffs for conveyance of a disputed one-half interest in lands situated near Forsyth, Montana. The court held that the statute of frauds barred plaintiffs' action and rendered judgment for defendants. Plaintiffs appeal.

In 1967, plaintiff, Robert Myers, desired to purchase land near Forsyth, Montana, suitable for operating a bowling alley. In researching the records in the Rosebud County courthouse, Myers located two separate tracts of land designated the "Harris tract" and the "Caskey tract". Myers purchased the Harris tract in May, 1967, and continued to inquire about the Caskey tract which was involved in probate proceedings. Later in the summer of 1967, the Caskey tract became available but Myers was without funds to purchase it. At that time, Myers was working in the service station of the defendant, Otto Bendewald, and Myers told Bendewald about the Caskey tract and that the attorney for the owner of the tract said the Caskey tract might be valuable for speculation if certain interstate highway construction materialized. The circumstances and conditions under which Myers imparted his knowledge of the Caskey tract to Bendewald remain controverted but in July 1967 Bendewald purchased the Caskey tract taking title in Bendewald and his wife's name.

At the time Myers discussed the Caskey tract with Bendewald there was an oral discussion of a proposed partnership between Myers and Bendewald involving Myers' proposed construction of a bowling alley and potentially an undertaking to include a possible trailer park. Myers, later at trial, testified that in

their "gentlemen's agreement", Bendewald purchased the Caskey tract subject to Myers' right to repurchase a one-half interest at a later date. However, Bendewald denied that the purchase of the Caskey tract was involved in the proposed partnership events which later developed.

Subsequently, pursuant to the proposed future partnership between Myers and Bendewald, Myers sold Bendewald a one-half interest in the Harris tract in November 1967. In May, 1968, Myers and Bendewald executed written articles of partnership to do business as "Evergreen Lanes" and to operate the bowling alley which was eventually constructed on the Harris tract.

In December 1969, it was ascertained that the highway department would, in fact, use some of the Caskey land for highway construction and Myers contacted Bendewald and together they drove to the land to observe the highway stakes. Myers then offered to buy a one-half interest in the Caskey tract and pressed Bendewald for a response. Bendewald asserted then, and again at trial, that he conditioned any sale upon the status of the partnership which was then in existence and operating. Bendewald did, however, give Myers a dollar figure required to reimburse Bendewald fully for one-half the purchase price, taxes, interest, and abstract costs. With this figure Myers had a deed prepared conveying a one-half interest in the Caskey tract from Bendewald and his wife to Myers and his wife. Later Myers attached a check to the unsigned deed and left the deed and check with Bendewald's attorney. Bendewald's attorney informed him that the deed and check were in his office but Bendewald never picked them up or ever saw them.

Shortly thereafter, while the deed and check were being held by Bendewald's attorney, Bendewald on January 4, 1970, examined the books of the partnership and discovered that the

partnership was ailing financially. Bendewald then told Myers he would not sell in view of the financial condition of the partnership and refused to discuss the matter further. In due time the partnership between Myers and Bendewald was dissolved, whereupon Myers then brought this suit seeking specific performance of an alleged contract for the sale of a one-half interest in the Caskey tract.

In Myers' complaint, he asserted two theories: (1) Bendewald was trustee for the benefit of Myers; and (2) Bendewald was unjustly enriched at the expense of Myers. Bendewald, in his answer, asserted the affirmative defense of the statute of frauds. The court, sitting without a jury, entered findings of fact and conclusions of law applying the statute of frauds and entered judgment in favor of the defendants, Bendewald and his wife. Following a denial of plaintiffs' motion for a new trial, plaintiffs appeal from the judgment and the denial of their motion for a new trial.

Appellants' issues on appeal substantially encompass the questions of whether the district court erred in failing to hold that the respondents were trustees for the benefit of the appellants and that the respondents were unjustly enriched at the expense of the appellants; whether the district court erred in its conclusion of law that the respondents were the sole owners of the Caskey land and that the statute of frauds was applicable; whether the district court erred in failing to accept the appellants' proposed findings of fact and conclusions of law; and whether the district court erred in failing to grant appellants' consolidated motion for new trial.

In substance these issues are confined to the central issue of what was the nature of the agreement, if any, between the parties Myers and Bendewald, the operative facts of that

agreement, and the law applicable in the resolution of the action brought before the district court.

Appellants have argued the existence of an oral "gentlemen's agreement" between the parties providing for a purchase of a one-half interest in the Caskey land pursuant to a larger scheme involving a partnership between Myers and Bendewald. Alternarively appellants argue that there was a valid contract entered into in December 1969, which was fully executed on Myers' part, consisting of memorandums in writing in the form of the check given in payment and the deed of conveyance which was drafted although never signed by Bendewald. Thus appellants argue that the statute of frauds does not apply following the holding of Besse v. McHenry, 89 Mont. 520, 527, 300 P. 199, stating the exception to the statute of frauds in the instance where there is complete performance of an oral contract by one of the parties.

Under the two theories of appellants' argument there are two facts which remain as a common problem underlying any theory of recovery in this case; specifically, the absence of any written agreement regarding the terms of any subsequent conveyance between Myers and Bendewald. In the first instance of appellants' argument, at the time of Bendewald's purchase of the Caskey tract in July 1967, there was no writing between Myers and Bendewald that pertained to either the Caskey tract or to any proposed partnership which was subsequently created in May 1968. Finding no written, enforceable agreement between the parties, the district court properly concluded that the statute of frauds was applicable in the absence of a written agreement.

In the second instance of appellants' argument, the tender of payment and draft of a deed are offered as proof of a memorandum and executed performance on the part of Myers which constitutes an exception to the statute of frauds. Standing alone, the actions

- 5 -

of Myers are unsupported by the conflicting testimony of the parties regarding both the existence of any oral agreement and the terms of such agreement, if any. The lack of evidence to support the claimed oral agreement and its claimed performance by appellants relates again to the inadequacy of an oral agreement for conveyance of land, the inescapable difficulty of determining the nature of such oral agreements and any claimed performance thereof. The problems involved in enforcing oral agreements for the conveyance of land as attempted in this case are nothing more than those constituting the basic purpose of the statute of frauds.

Without reference to the legislative history or the legion of cases giving rise to the statute of frauds, section 93-1401-7, R.C.M. 1947, expressly states which contracts must be in writing:

> "Agreement not in writing when invalid.
> In the following cases the agreement is invalid, unless the same or some note or memorandum thereof be in writing, and subscribed by the party charged, or by his agent; evidence, thereof, of the agreement cannot be received without the writing or secondary evidence of its contents:
>
> " * * *
>
> "4. An agreement for the leasing for a longer period than one year, or for the sale of real property, or of an interest therein; and such agreement, if made by an agent of the party sought to be charged, is invalid, unless the authority of the agent be in writing, subscribed by the party sought to be charged. * * *"

There being no evidence present in the case other than conflicting oral statements relating to an oral agreement between Myers and Bendewald, erstwhile business partners, for the conveyance of a one-half interest in the Caskey tract, the district court properly ruled that the statute of frauds barred recovery on plaintiffs' claim. We agree.

Accordingly, the judgment of the district court is affirmed.

- 6 -

_____ _Frank I. Haswell_ _____
                                    Associate Justice

We concur: _James T. Harrison_
                    Chief Justice

_Gene B. Daly_
_John Conway Harrison_
_Wesley Castles_
            Associate Justices

- 7 -